IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DICKEY | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 3926 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ROBERT A. MCDONALD, Secretary, | ) | |
| Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Dickey has sued his employer, Robert McDonald, Secretary of the Department of Veterans Affairs, alleging that he was discriminated against because of his age, race, and disability, and that he continues to be retaliated against for having complained about the alleged discrimination, all in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 633(a) et seq., the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., Section 1985 of the Civil Rights Act of 1871, and the Veterans Employment Opportunities Act of 1988, 5 U.S.C. § 7701 et seq. Defendant has moved for summary judgment. For the reasons described below, the motion is granted.

**FACTS**[1]

Plaintiff, a black male who is more than forty years old and suffers from post traumatic stress disorder, began his career with the Department of Veterans Affairs ("VA") in 1997 as a laborer. Plaintiff later became a truck driver, then, in 2008, he became a mental health technician, which is a GS-7 level job. Plaintiff maintains that position, at that level, to this day. As a mental health technician, plaintiff works with patients and clinicians regarding various aspects of appointment scheduling. Specifically, plaintiff sets up "grids," which enable clinicians to input their schedules into a computer program, calls patients to schedule appointments and remind them of upcoming and missed appointments, and helps clinicians enter their notes into a computer program. Additionally, plaintiff meets with some patients in a group setting.

---

[1] The following facts are, unless otherwise specified, undisputed and taken from the parties' Local Rule 56.1 statements, responses, and attached exhibits. However, plaintiff's response to defendant's L.R. 56.1 statement contains improper answers. L.R. 56.1(b)(3) requires "a concise response to the movant's statement." Plaintiff's "concise" responses overflow with argument and factual assertions wholly unrelated to the assertions in defendant's statements and often fail to either admit or deny the statement of facts to which they respond. In addition, many of plaintiff's answers claim that the statement of facts are admitted, but then proceed to give additional, extraneous information. This additional information will not be considered by the court. See, e.g., Stevo v. Frasor, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote clarity of summary judgment filings."); McGuire v. United Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."). The court reminds counsel that the purpose of L.R. 56.1 statements is to "identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments." Warner Bros. Entm't, Inc. v. Synergex Corp., 2014 WL 518085, at *1 (N.D. Ill. February 10, 2014).

In February 2010 the VA posted a job opening for a GS-9 level Grid Manager position. Plaintiff was qualified for the job, applied, and was ultimately one of three people selected to be interviewed. Plaintiff did not get the job and was never interviewed. Instead, Benjamin Deady, a white male in his twenties, was given the position in May 2010 without having applied. Deady had a master's degree in Health Administration and was selected through the Graduate Health Administration Training Program, a VA fellowship program designed to attract "future leaders" by providing eligible recent college graduates with a one-year internship, followed by employment at the VA. Fellows such as Deady are appointed to positions rather than having to apply through the regular process.

Deady held the Grid Manager position for just over one year, and was detailed to Washington, D.C. in July 2011. At that point, the VA determined that it was not feasible for one person to perform all of the duties of the Grid Manager and consequently reconfigured its scheduling system. After Deady's departure, many of his duties were assigned to Gwen Armster, who later retired. After Armster's departure, many of those duties were assigned to plaintiff. As of September 2011, plaintiff spends forty-percent of his working hours managing the grid.

In May 2014, after filing a second complaint with the Equal Employment Opportunity Commission ("EEOC"), plaintiff asked his supervisor why he was not receiving a GS-9 salary. Plaintiff's supervisor suggested that a "desk audit" be conducted. A desk audit is a process through which the VA sends a classification auditor to meet with the employee requesting a raise or promotion and his or her supervisor to determine if the employee's position should be reclassified. The employee or the employee's supervisor can request a desk audit when

3

significant changes have been made to an employee's position. At the conclusion of a desk audit, the employee's position can be upgraded, downgraded, or it can be retained. Plaintiff refused his supervisor's suggestion that a desk audit be conducted, apparently because he believed that the EEOC would investigate his job duties and pay, and because he felt he was entitled to the upgrade without a desk audit. Although plaintiff declined the desk audit, the VA's Human Resources Department performed an informal review of plaintiff's duties, without the possibility that the review would result in a downgrade, and concluded that an official desk audit was unlikely to result in an upgrade. Plaintiff did request a desk audit in May 2016, the results of which, if any, are unknown to the court.

Plaintiff's legal claims have evolved since he first learned that he was not being promoted to Grid Manager. A few months after Deady was appointed to the position, plaintiff filed his first complaint with the EEOC on August 9, 2010, alleging that he was discriminated against due to his age and race when he was denied the position, and retaliated against, by being rated as "exceptional" (rather than "outstanding") in his performance evaluation, because he complained of the discrimination. After a two day hearing on the matter, the EEOC found that plaintiff failed to prove any of his claims. The VA adopted the EEOC's finding and issued a Final Agency Decision on August 22, 2012, advising plaintiff that he had ninety days to appeal the decision to a federal district court. Plaintiff did not appeal.

On April 5, 2013, plaintiff filed a complaint with the Merit Systems Protection Board ("MSPB") alleging that his veteran preference rights under the Veterans Employment Opportunities Act ("VEOA") were violated twice; first, when he was not selected for the Grid Manager position, and again, when he was not promoted to a GS-9 level after he assumed some

4

of Deady's duties upon Armster's departure. The MSPB dismissed plaintiff's complaint as untimely on July 17, 2013, advising him of his appeal rights. Plaintiff did not appeal.

Plaintiff filed a second complaint with the EEOC on April 7, 2014. This time, plaintiff alleged that defendant discriminated against him due to his race and age in two ways; first, by assigning plaintiff some of Deady's duties without increasing his salary to a GS-9 level; and second, by denying his request for a promotion to GS-9. Plaintiff did not request a hearing on the matter within thirty days, and the EEOC issued a final agency determination finding no discrimination on January 29, 2015. Plaintiff received the decision on February 2, 2015, and filed his complaint in the instant case on May 4, 2015.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of establishing both elements, Becker v. Tenebaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in the non-movant's favor. Fisher v. Transco Services - Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies its burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, *2 (N.D. Ill. Feb. 12, 2013). In doing so, the non-movant cannot simply show some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, *2 (N.D. Ill. March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Summary judgment is inappropriate when "the evidence is such that a reasonable jury could

return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II. Analysis

Plaintiff claims that he was the victim of discrimination when he was not promoted to Grid Manager and that he suffers retaliation on a daily basis because he performs the duties of Grid Manager without being promoted or receiving a pay raise. According to plaintiff, he was denied the promotion and continues to be denied the pay raise because of his age, race, and disability, and in violation of his rights as a veteran. Defendant argues that several of plaintiff's claims fail because they are either time-barred or plaintiff failed to exhaust administrative remedies. Defendant further argues that those claims that are properly before the court still fail because plaintiff has not presented evidence that defendant's explanations for its employment decisions were pretextual. According to plaintiff, because all of his complaints to the EEOC, MSPB, and this court allege the same facts against the same individuals, they are not time-barred and he has not failed to exhaust administrative remedies. Plaintiff also argues that he has demonstrated pretext.

### A. Timeliness and Exhaustion of Administrative Remedies

The claims plaintiff brought in his first EEOC complaint and his MSPB complaint are time-barred. As for plaintiff's first EEOC complaint, plaintiff learned on August 22, 2012, that the EEOC had determined that plaintiff had failed to prove his claims, and that he had ninety days to appeal the decision to a federal district court. Plaintiff did not do so. Accordingly, plaintiff's claims that he was discriminated against due to his age and race when he was denied the Grid Manager position and retaliated against when he was rated as "exceptional" in his

6

performance evaluation, are time-barred.  See 42 U.S.C. § 2000e-5(f)(1); Threadgill v. Moore U.S.A., Inc., 269 F.3d 848, 849 (7th Cir. 2001).

As for the complaint plaintiff filed with the MSPB, that complaint was dismissed on July 17, 2013, after which plaintiff had thirty days to appeal the decision to a federal district court. See 5 U.S.C. § 7703(b)(2); Allison v. Dep't of Transp., 2011 WL 4345459, at *2 (N.D. Ill. Sept. 15, 2011).  Because plaintiff failed to appeal, his claims that his veteran preference rights under the VEOA were violated when he was not selected for the Grid Manager position and when he was not promoted to a GS-9 level after he assumed Grid Manager duties are time-barred.[2]

Plaintiff either ignores or misunderstands defendant's argument that the above claims are time-barred and attempts to argue that plaintiff's claims are timely because "[t]he [second] EEOC charge was timely filed, and all of the Counts in the complaint arise out of the exact same set of facts, against the exact same individuals."  This argument does nothing to address the fact that plaintiff has failed to pursue the claims he raised in his previous complaints and is better suited to defendant's second argument, that plaintiff cannot raise claims in this court that were not included in his second EEOC complaint.  Specifically, defendant argues that because plaintiff failed to allege discrimination on account of his disability or retaliation in his April 7, 2014, EEOC complaint, he has failed to administratively exhaust those claims.  According to plaintiff, no such failure has occurred because the disability and retaliation claims are "like or reasonably related to the allegations of the charge and growing out of such allegations."  Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994).  The court need not address this

---

[2] Plaintiff's related claim, that the VA's Graduate Health Administration Training Program violates the VEOA, is also time-barred.  See Chaney v. Rubin, 986 F. Supp. 516, 522 (N.D. Ill. 1997).

7

argument because, as discussed below, the court finds that plaintiff has failed to present evidence of discrimination.

B.     **Plaintiff has Failed to Present Evidence of Discrimination**

Title VII forbids employment discrimination based on race or national origin. 42 U.S.C. § 2000e-(a)(1). The Age Discrimination in Employment Act forbids employment discrimination based on age. 29 U.S.C. § 633a. The Americans with Disabilities Act forbids employment discrimination based on disability. 42 U.S.C. § 12101. Generally, a plaintiff making such claims can defeat summary judgment in one of two ways. First, plaintiff can point to sufficient evidence in the record, whether called direct, indirect or circumstantial, from which a reasonable jury could conclude that defendant fired her because of her race or national origin. This is the standard way to defeat a motion for summary judgment, as recently reiterated by the Seventh Circuit in Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 764 (7th Cir. 2016) (overruling the use of a "convincing mosaic" test.). Under this test, "evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence. . . . Relevant evidence must be considered and irrelevant evidence discarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" Id. at 765.

As Ortiz makes clear, however, id. at 766, a plaintiff may also choose to defend a summary judgment motion using the burden-shifting framework created by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, the plaintiff must first present evidence to establish a prima facie case: (1) that he is a member of a protected class; (2) he was satisfying his employer's legitimate expectations; (3) he suffered an adverse

employment action; and (4) similarly situated employees outside his protected class were treated more favorably. If the plaintiff satisfies this initial burden, then the employer must articulate a legitimate non-discriminatory reason for the adverse action. The burden then shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. See Andrews v. CBOCS W., Inc., 743 F.3d 230, 234 (7th Cir. 2014) (overruled in part by Ortiz, 834 F.3d at 765–66). As the Seventh Circuit has made clear, however, whichever method is used "the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." Bass v . Joliet Pub. Sch. Dist. No. 86, 746 F.3d 835, 840 (7th Cir. 2014).

In the instant case, the answer to that fundamental question is no. First, plaintiff's only evidence of discrimination is that he was assigned Grid Manager duties without receiving an increase in his salary, and that his supervisor denied his request for a promotion to GS-9. As for the promotion that he was denied, plaintiff does not allege that his supervisor had the authority to grant such a request, and the record indicates that he did not. The record contains not a hint of evidence that plaintiff's supervisor had decision-making authority to promote plaintiff, much less that he made any employment decision based on plaintiff's race, age or disability.

As for plaintiff's claim that he is performing GS-9 duties at a GS-7 salary, plaintiff knew that if he believed his duties had changed substantially, such that his position should be upgraded to GS-9, he could have requested a desk audit to determine if an upgrade was appropriate. Plaintiff argues that, because his supervisor could have initiated a desk audit independently, defendant's claim that plaintiff's pay was not increased because he did not request a desk audit is a "red herring" that supports a finding of retaliation. Plaintiff's argument ignores the reality that

9

plaintiff's supervisor suggested that a desk audit be conducted, a suggestion that plaintiff refused because he "shouldn't have to have a desk audit" if he was performing Grid Manager duties. Plaintiff further ignores the fact that, had plaintiff's supervisor independently initiated a desk audit after plaintiff refused one, plaintiff could have potentially faced the adverse outcome of his position being downgraded; a risk that his supervisor was understandably unwilling to take. Plaintiff, in fact, concedes that his supervisor most likely recommended a desk audit be conducted because he did not think that plaintiff's duties warranted an upgrade.

Instead of performing a desk audit that plaintiff clearly did not want, the VA's Human Resources Department initiated an internal review, which did not have the potential result of a downgrade, to investigate the legitimacy of plaintiff's claim that his position should be upgraded based on the duties he was assigned. That review concluded that plaintiff's position was unlikely to be upgraded should he request a formal desk audit. Plaintiff cites this review as further proof that he was discriminated against because, according to plaintiff, that review was a "formal" desk audit (though plaintiff concedes that he did not request one until May 2016) that was never completed. The record indicates otherwise. Indeed, the record shows that the VA went out of its way to address plaintiff's complaints and redress his grievances without subjecting him to a potentially adverse outcome. There is simply no evidence that anybody within the VA harbored any animus towards plaintiff, racial or otherwise. Rather, the record discloses that plaintiff's supervisors have been supportive of his efforts to have his position upgraded, and that plaintiff continuously failed to avail himself of defendant's procedure for upgrading his position because he believed he "shouldn't have to." Plaintiff argues that his position was not upgraded due to discrimination, but the record demonstrates otherwise.

Nor can plaintiff's case survive under the McDonnell Douglas framework. Plaintiff has no problem establishing that he is in a protected class, that he was meeting his employer's legitimate expectations, and that he suffered an adverse employment action. That, however, is as far as plaintiff gets. Plaintiff has not identified any similarly situated employee outside of his protected classes who was treated more favorably. Indeed, the one person that plaintiff compares himself to, Benjamin Deady, was not similarly situated to plaintiff because he had a master's degree in Health Administration and participated in a VA fellowship program designed to attract "future leaders" by providing eligible recent college graduates non-competitive employment with the VA.

Moreover, even if plaintiff could establish a prima facie case, there is no evidence that defendant's legitimate non-discriminatory reason for not upgrading plaintiff's position, that plaintiff refused a desk audit, is false. Plaintiff's argument that he need not *prove* pretext is well taken, but he is incorrect in arguing that he need only allege facts that he would have been treated differently if he had been young, healthy, and white. At the summary judgment stage, plaintiff must show that "the *evidence* is such that a reasonable jury could return a verdict for [plaintiff]." Liberty Lobby, Inc., 477 U.S. at 248 (emphasis added). In the instant case there is no evidence from which a jury could conclude that plaintiff's position was not upgraded because of prohibited discrimination.

Finally, this lack of evidence described above also dooms plaintiff's claim of retaliation. There is no evidence that defendant's employment decisions were based on plaintiff's complaints of discrimination. Additionally, there is no evidence that defendant violated its own policy regarding the desk audit procedure, as plaintiff alleges.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (Doc. 35) is granted.


**ENTER:** February 23, 2017

_____
**Robert W. Gettleman
United States District Judge**